FLORENCE C. VIGARS et al., Appellees, v. JOHN R. HEWINS et al., Appellees; NATIONAL BANK OF COMMERCE, Appellant.

MORTGAGES: Equitable Mortgage by Advancing Purchase Price. 1 When one loans money to vendee for the special purpose of enabling the vendee to purchase specified property, with an oral

agreement that vendee will assign the contract to the lender as security, and the money is so used, though indirectly, and the contract is delivered to the lender, and is, later, formally assigned in fulfillment of the contract, he acquires an equitable lien or mortgage, superior to the lien of a judgment creditor of the vendee.

**VENDOR AND PURCHASER:** Equitable Interest Based on Option.
2   No equitable interest in property is created by the payment of a merely *nominal* sum, in connection with an agreement that the vendor will, at a later date, and on the payment of a named substantial sum, execute a contract of sale to the vendee. In other words, a mere optionee has no equitable interest in the property covered by the option.

*Appeal from Woodbury District Court.*—GEORGE JEPSON, Judge.

OCTOBER 18, 1918.

ACTION in equity, to foreclose a contract for the sale of real estate. The facts are fully stated in the opinion.—*Affirmed.*

*R. H. Burton-Smith,* for appellant.

*Edwin J. Stason, E. M. Corbett, O. D. Nickle,* and *Shull, Gill, Sammis & Stilwill,* for appellees.

STEVENS, J.—Plaintiffs bring this suit in equity, to foreclose a contract for the sale of real estate. The question presented does not involve the right of plaintiffs to the relief prayed, but arises upon a controversy between defendants and cross-petitioners. The material facts, briefly stated, are that, on November 14, 1915, the defendant John R. Hewins paid plaintiffs the sum of $10, on an oral agreement that plaintiffs would, upon the payment of $500, execute and deliver to him a contract for the sale of certain real estate in Sioux City. On November 23d, Hewins borrowed $500 of the defendant Wm. J. Radcliffe,

1. MORTGAGES: equitable mortgage by advancing purchase price.

for the purpose of making the agreed payment, at the same time promising to secure him the payment thereof, by an assignment to him of the contract. On the following day, the contract was executed, and $490 was paid by Hewins to plaintiffs. Hewins, immediately upon receipt of the contract, delivered the same to Radcliffe as security for the payment of the money advanced. Some time prior thereto, the defendant and cross-petitioner, the National Bank of Commerce, obtained a judgment against Hewins in the county in which the real estate was situated. The bank claims that the lien of its judgment attached to the equitable interest of Hewins in the real estate, and that same is senior to that of its codefendant and cross-petitioner, Radcliffe. The court, however, found that Radcliffe acquired a lien by the above transaction superior to that of the bank, and decreed the foreclosure of plaintiffs' contract, and ordered the land sold upon special execution, and the proceeds arising therefrom to be applied: first, to the payment of costs; second, to the payment of the judgment in favor of plaintiffs; third, to the payment of the judgment which was entered in favor of Radcliffe; and, fourth, to the payment of the bank's judgment. The bank appeals.

It is the contention of the bank that, by the transaction of November 14th, Hewins acquired an equitable interest in the land, and that the transaction of November 24th, resulting in the payment of the balance of the $500 and the execution of the contract, was, in effect, nothing more than the consummation of the oral contract entered into on the 14th; and that, even though it were conceded that the delivery of the contract to Radcliffe, with whatever oral agreement was made in respect thereto, might create a lien on the property in his favor, such lien, if created, is junior and inferior to the lien of the bank's judgment, which, appellant claims, at-

2. VENDOR AND PURCHASER: equitable interest based on option.

tached immediately upon the vesting of an equitable interest in the property in Hewins.

It is, of course, true that a judgment will attach to, and become a lien upon, an equitable interest in real estate held at the time of, or acquired subsequent to, the judgment. *Clayton v. Ellis*, 50 Iowa 590; *Boyle v. Maroney*, 73 Iowa 70. But the judgment does not attach to the land, as distinct from the title held or obtained by the debtor, but becomes a lien only upon his interest. *Hunter v. Citizens Sav. & Tr. Co.*, 157 Iowa 168. It will thus be seen that much depends upon the effect, in equity, on the transactions had between plaintiffs and Hewins on November 14th. The agreement between the parties was that a contract of sale would be executed only upon the payment of $500 by Hewins to plaintiffs; and there is nothing to show that it was the intention of either of the parties thereto that Hewins should acquire any interest in property until the payment of the $500. The agreement was not to execute a contract agreeing to convey the property to him upon the payment of $10, but only upon the payment of the full sum of $500. If this payment should not finally be made, Hewins would acquire no interest in the property. The court below held that what he actually obtained by the transaction was an option to purchase the property at a future date, by paying the balance of the $500. In this holding the court is sustained by abundant authority. *Womack v. Coleman*, 92 Minn. 328 (100 N. W. 9, 11); *Staniford v. Thompson*, 135 Fed. 991; *Montgomery v. Hundley*, 205 Mo. 138 (103 S. W. 527, 531); *Benedict v. Pincus*, 191 N. Y. 377 (84 N. E. 284); *McGregor v. Ireland*, 86 Kan. 426 (121 Pac. 358). We have held that an option to purchase real estate does not pass an interest to which the lien of a judgment will attach. *Sweezy v. Jones*, 65 Iowa 272; *Blank v. Independent Ice Co.*, 153 Iowa 241.

It is further contended by counsel for appellant that

the mere delivery of the contract to Radcliffe did not create an equitable lien in his favor; and if this were all the evidence shows, this contention would have to be sustained. *In re Assignment of Snyder,* 138 Iowa 553. But it appears from the evidence that it was orally agreed between plaintiffs and Hewins that the latter would assign the contract, when executed, to Radcliffe, as security for the payment of the money borrowed, for the purpose of enabling Hewins to purchase the property; and that, immediately upon the execution thereof, he delivered the same to Radcliffe, as agreed, but did not then execute a written assignment of his interest therein to him. We held in *In re Assignment of Snyder,* that, where the delivery of the title papers was accompanied by a written memorandum attempting to assign the interest of the holder therein as security, although informally, an equitable lien was, nevertheless, created thereby. It has also often been held by courts generally that specific performance of a parol agreement to execute a written assignment of title papers as security for the payment of money, when, at the time of making the oral contract, the title papers were delivered, may be enforced by a suit in equity, and that an equitable lien will thereby be created. *Foster Lbr. Co. v. Harlan County Bank,* 71 Kan. 158 (80 Pac. 49); *Sprague v. Cochran,* 144 N. Y. 104 (38 N. E. 1000); *Hicks v. Turck,* 72 Mich. 311 (40 N. W. 339); *Irvine v. Armstrong,* 31 Minn. 216 (17 N. W. 343); *King v. Williams,* 66 Ark. 333 (50 S. W. 695); *Baker v. Baker,* 2 S. D. 261 (49 N. W. 1064); Jones on Mortgages (6th Ed.) Sec. 164.

In *Sprague v. Cochran,* supra, the Supreme Court of New York, referring to this question, said:

"The doctrine of equitable mortgages is not limited to written instruments intended as mortgages, but which, by reason of formal defects, cannot have such operation without the aid of the court, but also to a very great variety

of transactions to which equity attaches that character. It is not necessary that such transactions or agreements as to lands should be in writing, in order to take them out of the operation of the Statute of Frauds, for two reasons: First, because they are completely executed by at least one of the parties, and are no longer executory. * * * "

It is also the settled law of this state that a mortgage given to a third person, who furnishes the money with which property is purchased, is entitled to the same protection as though it were executed to the vendor. *Kaiser v. Lembeck,* 55 Iowa 244; *Kent v. Bailey,* 181 Iowa 489.

The court below held that Radcliffe gave Hewins the $500 check with the understanding that it was to be used in making the first payment upon the property, and that Radcliffe was to hold the contract as security for the money; that the contract was delivered to Radcliffe in pursuance of this understanding, and, in February, 1916, a further formal written assignment was executed and delivered to Radcliffe; that by this transaction the latter acquired an equitable lien upon the property purchased, which is senior to the lien of the bank's judgment. Applied to the facts as found above, the authorities cited by counsel for appellant are not inconsistent with the conclusion reached by the trial court, with which we are constrained to agree.

It is, however, contended by counsel for appellant that the money loaned by Radcliffe to Hewins was not applied by the latter on the purchase price of the land. It appears from the evidence that Hewins was interested in an account carried on the books of the bank in the name of the Hewins Insurance Agency; that, on November 24th, he withdrew some money from this account and had the same credited upon his personal account; and that he paid plaintiffs by check thereon. At the time this check was drawn, the $500 check received from Radcliffe was in his

possession; and, on November 29, 1915, he deposited the same in the defendant bank to his personal credit, and on December 1st following, drew another check for $490 upon his personal account, which was doubtless for the purpose of restoring the money withdrawn from the account of the Hewins Insurance Agency. The above matters, however, appear only from the insurance and personal account of Hewins, offered in evidence by the bank, and the date of payment stamped upon the Radcliffe check. Whether the money obtained from Radcliffe was by Hewins applied directly to the payment of the purchase of the property or not, he was enabled to make said purchase by the transaction, and, indirectly at least, the funds were used for the purpose for which they were loaned by Radcliffe. The evidence of the parol agreement between Radcliffe and Hewins is not disputed, and shows conclusively that the contract was delivered to the former upon the express parol understanding and agreement that same was to be held by him as security for the payment of the money borrowed, and that a written assignment would be executed by Hewins to evidence the same. Later, a formal written assignment was executed and delivered to Radcliffe, thereby fully consummating the terms of the parol contract. The holding of the trial court that an equitable lien was thereby created upon the property in favor of Radcliffe is fully sustained by the evidence, is equitable, just, and in accordance with authority. The decree and judgment of the court below are, therefore,—*Affirmed.*

PRESTON, C. J., WEAVER and GAYNOR, JJ., concur.