READ ET AL., RESPONDENTS, *v.* LEWIS AND CLARK COUNTY, APPELLANT.

(No. 3,982.)

(Submitted January 7, 1919. Decided January 20, 1919.)

[178 Pac. 177.]

*Taxation—"Credits"—Option Contracts—Appeal and Error—Agreed Statement of Facts—Conclusiveness—Evidence.*

Appeal and Error—Agreed Statement—Extent of Review.
   1.   In a cause decided by the district court upon an agreed statement of facts (Rev. Codes, sec. 6769), the office of the supreme court on appeal goes no further than to ascertain and determine whether the trial court drew the correct inference from the facts stipulated and rendered the proper judgment.
Agreed Statement—Conclusiveness.
   2.   Where an agreed statement of facts disclosed that a written contract involving the transfer of real and personal property was under-

---

For a review of authorities discussing the question as to whether an amount due under contract for the purchase of land, not evidenced by a note or purchase money mortgage, is a credit subject to taxation, see note in 17 L. R. A. (n. s.) 1220.

On the general rule that parol evidence is not admissible to vary, add to or alter a written contract, see note in 17 L. R. A. (n. s.) 270.

stood and intended by the grantor and grantees as granting a right to exercise an option to purchase, all others were concluded from asserting that the transaction constituted a sale.

Taxation—Option to Purchase—"Credits."

3.   An option to purchase real and personal property created no indebtedness which could be enforced, and therefore, the amount due and unpaid under the contract was not a "credit" within the meaning of section 2501, Revised Codes, *viz.,* a solvent debt, which could properly be taxed.

Contracts—Varying Terms—Rule—Exception.

4.   The rule declared by section 7873, Revised Codes, that in a controversy between the parties to a written contract or their privies, parol evidence cannot be introduced to vary, enlarge or contradict its terms, *etc.,* has no application in a controversy between a party to the contract and a stranger.

Agreed Statement—Conclusiveness.

5.   An agreed statement of facts voluntarily made and submitted to the trial court is binding upon the parties and the court.

*Appeal from District Court, Lewis and Clark County; R. Lee Word, Judge.*

ACTION by Laura T. Read, individually and as executrix of the will of Francis S. Read, deceased, against Lewis and Clark County. From a judgment for plaintiff, defendant appeals. Affirmed.

*Mr. S. C. Ford,* Attorney General, *Mr. Frank Woody,* Assistant Attorney General, and *Mr. Jos. P. Donnelly,* for Appellant, submitted a brief; *Mr. Donnelly* argued the cause orally.

The weight of judicial authority is to the effect that such a contract as the one in question represents a taxable credit in the hands of the vendor. (*Dallas County* v. *Boyd,* 138 Iowa, 583, 17 L. R. A. (n. s.) 1220, 116 N. W. 700; *Griffin* v. *Board of Review,* 184 Ill. 275, 56 N. E. 397; *Tessier* v. *Nashua,* 75 N. H. 572, 78 Atl. 495; *Golden* v. *Munsinger,* 91 Kan. 820, 139 Pac. 379; *City of Marquette* v. *Michigan, I. & L. Co.,* 132 Mich. 130, 92 N. W. 934; *Nelson* v. *Breitenwischer,* 194 Mich. 30, 160 N. W. 626; *Clark* v. *Horn,* 122 Iowa, 375, 98 N. W. 148; *State* v. *Rand,* 39 Minn. 502, 50 N. W. 835; *Martin* v. *Wise,* 183 Ind. 530, 109 N. E. 745; *In re Assessment Aurora Gaslight etc. Co.* (Ind.), 113 N. E. 1012; *Beardsley* v. *Beardsley,* 138 U. S. 262, 34 L. Ed. 928, 11 Sup. Ct. Rep. 318.)

*Messrs. Wight & Pew,* for Respondents, submitted a brief; *Mr. Chas. E. Pew* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought under section 2742 of the Revised Codes, as amended by Chapter 135 of the Laws of 1909 (Laws 1909, p. 201), to recover of the defendant $676.50, the amount of a tax paid to its treasurer under protest. Pending a hearing of the issue of law presented by a general demurrer interposed to the complaint, counsel for the respective parties prepared an agreed statement of facts and submitted the controversy for decision upon this statement. The court rendered judgment for plaintiff. Defendant has appealed.

Briefly stated, the facts are: On October 20, 1915, Francis S. Read died testate in Lewis and Clark county, leaving real estate in that county and also in Cascade county. On November 15 the plaintiff, a resident of Lewis and Clark county, was appointed and qualified as executrix of the will and entered upon the discharge of her duties as such. On June 2, 1916, she made out a statement or list of all property owned or controlled by her in any capacity, including all solvent credits belonging to her or the estate of deceased in her hands on the first Monday in March of that year, other than the real estate in Cascade county, verified it as provided by law, and delivered it to the assessor of Lewis and Clark county. Thereafter the assessor added to the list so made an item of $30,000, claiming the same to be a solvent credit belonging to the estate of the deceased, and entered the list so amended upon the assessment-roll of the county for the year 1916. The basis of the claim of the assessor was the following: On April 26, 1909, Francis S. Read, the deceased, and Laura T. Read, his wife, entered into a contract with Thomas A. Grimes and Howard Pew, by the terms of which they agreed to sell and the latter agreed to buy the real estate described therein, situate in Cascade county, together with certain personal property used in connection therewith,

for the sum of $46,000. Of this sum $10,000 was to be paid upon the execution of the contract, and the balance of $36,000 on or before the expiration of ten years thereafter, with interest payable annually at the rate of six per cent per annum, payment upon the principal to be made in installments at any time of not less than $500. The Reads were to execute and deliver at once a bill of sale for the personal property. They were also to execute a warranty deed to the real estate, which, together with a copy of the contract, was to be deposited as an escrow with the Union Bank & Trust Company of Helena, to be delivered to Grimes and Pew upon payment by them to the bank of the balance of $36,000, or upon a written acknowledgment, delivered to it by them, showing that payment had been made in full. Grimes and Pew were to have immediate possession both of the personal property and the land, and were to pay all taxes for the year 1909 and all thereafter levied. In case the buildings on the land should be insured either by the Reads or by Grimes and Pew, the amount paid on the policy on account of any loss was to be applied to the payment of the balance then due under the contract. The contract contains these provisions:

"It is further agreed that the failure of the said parties of the second part to make any payments of principal or interest, when the same shall become due as herein provided, shall not work a forfeiture hereof, unless such delinquent payment or payments shall not be made within sixty (60) days after written notice shall be served upon the said parties of the second part by the said parties of the first part to claim a forfeiture of this contract by reason thereof.

"It is further provided that, in the event this contract shall be forfeited as above provided, by failure of the second parties to make any such payment or payments within sixty (60) days, then and in that event said parties of the second part shall forfeit to said parties of the first part as liquidated damages, and as rental for the use and occupation of said premises, all payments made to said parties of the first part, or either of them, by said parties of the second part under the terms of this agree-

ment, and said parties of the second part shall in such case be subject to no further liability thereunder, and said bank shall thereupon redeliver said deed to said parties of the first part.''

When the assessor added the item of $30,000 to plaintiff's list, she applied by petition to the board of county commissioners, sitting as a board of equalization, to strike it out on the ground that it did not represent a solvent credit and was not subject to taxation. The board denied the application, on the ground that it was in doubt whether the item was a solvent credit. It was thereafter included in the amount of plaintiff's assessment for that year, and when the time came for the payment of taxes the plaintiff paid under protest the amount due thereon, at the rate of twenty-two and one-half mills, together with taxes on other property.

In the agreed statement of facts it was expressly stipulated: ''That it was at the time of the execution of said contract the intention of the parties thereto that the parties of the first part thereto should have no recourse or remedy against the parties of the second part thereto in case of default by second parties in the making of any payments or the performance of any condition therein contained on their part to be performed, when payment or performance should be due, other than the forfeiture of moneys paid and of all future rights under said contract, and the retaking of possession of said land described in said contract, and that no judgment could be recovered against said parties of the second part, or either of them, on account of any default in making any such payments or in performing any such conditions above specified, but that the payment of said deferred portions of the purchase price should be and was optional with second parties thereto.'' Immediately after the execution of the contract Grimes and Pew took possession of the property. On the first Monday in March, 1916, a balance of $30,000 had not been paid. In the last clause of the statement it was stipulated: ''That the only question involved in this case for determination by the court is whether said balance of $30,000 of the purchase price specified in said contract is taxable as a

credit." Our task, therefore, is limited to a determination of this one question.

Counsel for the defendant insist that the contract is, on its face, bilateral and enforceable by the plaintiff at her option, and hence that the unpaid balance represents money at interest, and is therefore a taxable credit, within the meaning of the statute. (Rev. Codes, sec. 2501.) On the other hand, counsel for plaintiff insist that the forfeiture clause in the contract provides the only remedy to which the plaintiff may resort in case of default by Grimes and Pew, and hence that the contract is not one of sale, but a contract for a sale, in the nature of an option, as defined by this court in *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Clark* v. *American Developing & Min. Co.,* 28 Mont. 468, 72 Pac. 978, and *Tyler* v. *Tyler,* 50 Mont. 65, 144 Pac. 1090, and hence that the unpaid balance is not a credit. The question thus presented is a new one in this state, though it has several times been considered by the courts of other states, the decisions presenting much conflict. The following are illustrative cases: *Dallas County* v. *Boyd,* 138 Iowa, 583, 17 L. R. A. (n. s.) 1220, 116 N. W. 700; *Griffin* v. *Board of Review,* 184 Ill. 275, 56 N. E. 397; *Tessier* v. *Nashua,* 75 N. H. 572, 78 Atl. 495; *McGregor* v. *Ireland,* 86 Kan. 426, 121 Pac. 358.

It will be noted, in passing, that the Kansas court considers contracts similar to the one in controversy here as having the nature of options, but nevertheless declares them taxable as representing valuable property rights; their value for this purpose depending upon the particular circumstances, and not upon the amount of the purchase price remaining unpaid.

It may be conceded that it is a debatable question whether the writing on its face imports a sale, or merely a contract for a sale. However this may be, the record presented to us, not only relieves us, but precludes us, from construing it to ascer-
[1]    tain its real import. Section 6769 of the Revised Codes provides: "When any cause is tried and submitted upon a written statement of facts agreed to by the parties or their attor-

neys, such statement shall have the effect of a special verdict or finding of facts, and judgment shall be pronounced thereon as upon a special verdict or finding of facts; and in such case no finding of facts shall be made unless such statement shall fail to embrace all the facts proved and in issue, in which case any additional fact may be found upon evidence which is not repugnant to the agreed statement.'' Under this provision our office is ended when we have ascertained and determined whether the trial court drew the correct inference from the facts stipulated and rendered the proper judgment. (*Hale* v. *Jefferson County*, 39 Mont. 137, 101 Pac. 973.)

The statement discloses that the parties intended and understood that the Reads granted to Grimes and Pew only the right [2, 3]  to exercise an option. Since this was their understanding and intention when they executed the contract, all other persons are concluded from asserting that it was other or different. The result is that it created no enforceable indebtedness due from Grimes and Pew to the Reads, and therefore the amount still due and unpaid is not a "credit," within the meaning of section 2501 of the Revised Codes, *supra, viz.,* a solvent debt, secured or unsecured, owed by Grimes and Pew to the Reads. The judgment of the district court was therefore correct.

But counsel for the defendant insist that the agreed statement was an attempt by counsel to reform the contract, and, as it discloses nothing but the conclusion of the parties, it was not binding upon the district court, and should have been disregarded by it. In support of this contention they cite the case of *Rampton* v. *Dobson*, 156 Iowa, 315, 136 N. W. 682. As pointed out by Justice Evans in his dissenting opinion, in that case the conclusion announced by the court was in direct conflict with the earlier case of *In re Shields Bros.*, 134 Iowa, 559, 10 L. R. A. (n. s.) 1061, 111 N. W. 963, in which the contrary conclusion was reached upon a substantially identical state of [4]  facts. In a controversy between the parties to a written contract or their privies, parol evidence cannot be introduced to vary, enlarge or contradict its terms, except when a mistake or

imperfection therein is put in issue by the pleadings or when the validity of the contract is the fact in dispute. (Rev. Codes, sec. 7873.) In a controversy between a party to the contract and a stranger, however, the rule does not apply. As against him, a party may assert that the agreement was other or different in any respect from that which the writing expresses. (*McMasters* v. *Insurance Co.,* 55 N. Y. 234, 14 Am. Rep. 239; *Massie* v. *Chatom,* 163 Cal. 772, 127 Pac. 56; *Pacific Biscuit Co.* v. *Dugger,* 42 Or. 513, 70 Pac. 523; *In re Shields Bros., supra;* 17 Cyc. 750.)

But, aside from this consideration, it was competent under the statute, *supra,* for the attorneys representing the plaintiff and [5] the defendant to stipulate the facts. The stipulation having been voluntarily made and submitted to the court, counsel for defendant cannot be heard to urge the objection they now make.

The judgment is affirmed.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE COOPER concur.