ROSENFELD, Appellant, *v.* JAKWAYS et al.,
Respondents.

(No. 5,226.)

(Submitted May 25, 1923.   Decided June 19, 1923.)

[216 Pac. 776.]

*Conversion — Beaver    Pelts — Complaint — Insufficiency —
Wild  Animals—Ownership  in  State—Pleading.*

Wild Animals—Ownership in State—Exception.
 1.   The ownership of wild animals is in the state, held by it in its
 sovereign capacity, for the use and benefit of the people, and neither
 such animals nor parts thereof are subject to private ownership ex-
 cept in so far as the state may choose to make them so.

Same—State may Prohibit Killing.
 2.   If the state so elects it may prohibit absolutely the killing of
 wild animals, or it may regulate and prohibit their sale, whether killed
 within or without the state, and it may grant or withhold the right
 to hunt.

Same—Possession *Prima Facie* Evidence of Killing.
 3.   The state may make the possession of the bodies or parts of wild
 animals *prima facie* evidence that the possessor killed them, and may
 impose on him the burden of showing that his possession is lawful.

Same—Beaver Pelts—Qualified Ownership.
 4.   Under section 3722, Revised Codes of 1921, prohibiting the killing
 of beaver except as therein provided, and section 3725, making pos-
 session of certain wild animals or parts thereof *prima facie* evidence

---

 1.  Property right in wild animals, see note in Ann. Cas. 1917B, 949.
 Applicability of game laws to game raised in captivity, see notes in 10
 L. R. A. (n. s.) 1155; L. R. A. 1916C, 343.

[67 Mont. 558.]

that the possessor killed the same, private ownership of beaver pelts is not a matter of common right, but may be acquired only by compliance with the restrictions, and then such ownership is qualified.

Pleading—Statutory Right or Privilege Granted must be Pleaded.

5. Whenever one desires to avail himself of a statutory privilege or right granted to him, the existence of which depends on the presence of designated or enumerated facts, such facts must be alleged.

Wild Animals—Beaver Pelts—Conversion—Complaint—Necessary Allegation.

6. *Held*, in an action against the state game warden for the conversion of beaver pelts taken by him from plaintiff's possession, that in view of the peculiar character of the subject matter of the action, the restricted statutory title or right of possession which plaintiff could acquire therein, and the rule of pleading above (par. 5), it was incumbent on plaintiff to allege facts in her complaint from which it could be said *prima facie* that her possession and claim of ownership were lawful, and that failure to do so rendered the complaint insufficient.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Annie Rosenfeld against C. J. Jakways, as State Game and Fish Warden and another. Judgment for defendants and plaintiff appeals. Affirmed.

*Messrs. O'Leary & Doyle,* for Appellant, submitted a brief; *Mr. W. F. O'Leary* argued the cause orally.

The statute does not make the possession of the game or any part thereof unlawful. Practically all the cases where it has been held that plaintiff must show in his complaint that he has complied with all of the game laws the statute has made the mere possession of the hides or animals in itself unlawful. In this state there is no such law. Under a Minnesota statute all wild game was the property of the state and the possession of any game, the killing of which is prohibited by law, *prima facie* evidence that it is the property of the state at the time it was taken, or killed, and that it was taken or killed within the state, and that the burden of proof is upon the party in possession to show that such game was killed or taken as provided by law. The supreme court of that state in *Linden* v. *McCormick*, 90 Minn. 337, 96 N. W. 785, holds that the burden was not on the plaintiff in conversion to prove that the animals were lawfully taken.

The question here is somewhat analogous to questions of this kind arising in cases of the unlawful taking of intoxicating liquor. It would not be seriously contended, we believe, in an action for conversion of intoxicating liquor that it is the duty of the plaintiff to allege and prove in the first instance that he was lawfully in the possession of and had lawfully acquired the title to intoxicating liquor that may have been unlawfully converted. (*Blunk* v. *Waugh*, 32 Okl. 616, 39 L. R. A. (n. s.) 1093, 122 Pac. 717; *Westover* v. *Calder*, 64 Mont. 264, 209 Pac. 306.)

It is not in every instance in this state that the game warden may seize property of this kind though it be unlawfully held or acquired without himself first complying with certain regulations. Under section 3659 of the Revised Codes of 1921, the game warden may not seize game nor any parts of game in a building without first securing a search-warrant for so doing, and if he does, he unlawfully seizes the property, and would undoubtedly be subject to an action in conversion under the rule laid down in the case of *Westover* v. *Calder*, supra.

The theory upon which the lower court sustained the demurrer might be applicable to a case involving other game than beaver hides, but it cannot be made applicable to beaver hides for the reason that under the statutes of this state beaver hides may become the subject of purchase or barter and sale in the open market. The burden of proof, therefore, is upon the defendants to show that the beaver were taken unlawfully, and that the plaintiff's possession of the same was unlawful, and that the defendants took such beaver hides from the plaintiff in accordance with the statutes.

*Mr. Wellington D. Rankin*, Attorney General, submitted a brief; *Mr. Frank Woody*, Assistant Attorney General, argued the cause orally.

The authority of the state to deal with fish and game in any manner it sees fit has not been questioned by any court.

(*Magner* v. *People*, 97 Ill. 320; *Geer* v. *Connecticut*, 161
U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. Rep. 600 [see, also,
Rose's U. S. Notes]; *Ex parte Maier*, 103 Cal. 476, 42 Am. St.
Rep. 129, 37 Pac. 402; *Sherwood* v. *Stephens*, 13 Idaho, 399,
90 Pac. 345; *Hornbeke* v. *White*, 20 Colo. App. 13, 76 Pac.
926; *Vail* v. *Seaborg* (Wash.), 207 Pac. 15.) Where the state
has taken over the ownership and control of game animals,
fish and birds, it has the power to limit and qualify the
ownership in such manner as it may deem necessary for the
public good. Otherwise stated, when the statute vests the
ownership of game in the state as a proprietor, it takes away
from the people the right to capture and kill game, unless
prohibited, leaving under the statute no rights except such
as are permitted. (*Causey* v. *Brickey*, 82 Wash. 653, 144
Pac. 939.)

The cases involving intoxicating liquor cited by appellant
are not in point. Game is and always has been property
of the state. This is not true of intoxicating liquor. Hence,
a man is entitled to keep and use intoxicating liquor, except
where made unlawful, but he may possess game animals, birds,
and fish only in the manner permitted by statute, where, as
in this state, ownership thereto has been asserted by the state.

It is a well-established principle of law that where a pleader
desires to avail himself of a statutory privilege or right
granted him on particular facts, such facts must be alleged
in the complaint. (*Dye* v. *Dye*, 11 Cal. 163; *Perkins* v.
*Laux*, 14 Idaho, 607, 95 Pac. 695; *Cochise County* v. *Miche-
lena*, 15 Ariz. 477, 140 Pac. 63; *Malone* v. *Escambia County*,
116 Ala. 214, 22 South. 503; *Tweedy* v. *Fremont County*, 99
Iowa, 721, 68 N. W. 921; *Pitkin County* v. *First Nat. Bank*,
6 Colo. App. 423, 40 Pac. 894; *Sherwood* v. *Stephens*, 13
Idaho, 399, 90 Pac. 345, 347.) So where the statute makes
the possession of any part of the game illegal, the burden
is upon the person in possession to allege and prove facts
which will entitle him to possession either in an action against
him for the game or in an action by him for its wrongful

seizure. (*Hornbeke* v. *White, supra; People* v. *Johnson,* 38 Colo. 76, 88 Pac. 184.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In her complaint plaintiff alleges that on March 9, 1922, she was the owner in possession, and entitled to the possession of ninety-eight beaver pelts, of the value of $2,500; that on the day named the defendant Jakways, as state game warden, and defendant Roushar, as deputy game warden, wrongfully took the pelts from her, and converted them to their own use, to her damage, *etc.* To this complaint a general demurrer was sustained, and plaintiff, electing to stand upon her pleading, suffered a judgment of dismissal to be entered, and appealed.

The one question for determination is: Does the complaint state a cause of action? If the subject matter of litigation were ordinary chattels the answer would be in the affirmative under all the authorities. (*Paine* v. *British-Butte Mining Co.,* 41 Mont. 28, 108 Pac. 12.) The trial court, however, proceeded upon the theory that, by reason of the peculiar character of the subject matter, the burden was cast upon the plaintiff to allege facts from which it would appear that her possession and claim of title are lawful.

That the ownership of wild animals is in the state, held [1-3] by it in its sovereign capacity for the use and benefit of the people generally, and that neither such animals nor parts thereof are subject to private ownership except in so far as the state may choose to make them so, are principles now too firmly established to be open to controversy. (*Geer* v. *Connecticut,* 161 U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. Rep. 600 [see, also, Rose's U. S. Notes]; 12 R. C. L. 691–703.) If the state so elects it may prohibit absolutely the killing of such animals, or it may regulate the killing and prohibit the sale in this state of such animals or the parts, whether the animals were killed within or without the state. It may

grant or withhold the right to hunt, and if it grants the right at all it may do so upon such terms and conditions as it sees fit to impose so long as constitutional limitations or guaranties are not infringed. Aside from any question of common ownership, the state may exercise these rights in virtue of its police power. There is practically not any dissent from these general propositions. (*Ex parte Maier,* 103 Cal. 476, 42 Am. St. Rep. 129, 37 Pac. 402; *State* v. *Weber,* 205 Mo. 36, 120 Am. St. Rep. 715, 12 Ann. Cas. 382, 10 L. R. A. (n. s.) 1155, 102 S. W. 955; *Jones* v. *Metcalf* (Vt.), 119 Atl. 430.) Likewise the state may make the possession of the bodies of wild animals or parts thereof *prima facie* evidence that the possessor killed the animals, and may impose upon the possessor the burden of showing that his possession is lawful. (*State* v. *Pippi,* 59 Mont. 116, 195 Pac. 556.)

In the proper exercise of its power this state prohibits ab-[4] solutely the killing of certain wild animals. (Secs. 3700 and 3719, Rev. Codes 1921.) It prohibits the killing of others for a designated period (section 3699), others within prescribed areas (section 3696), and others except under peculiar circumstances and restrictions which are specifically enumerated. Section 3722 provides: "It shall hereafter be unlawful to kill beaver within this state except as hereinafter provided." Two exceptions only are mentioned, and these are set forth fully:

(1) A taxpayer or *bona fide* owner of real estate in this state may kill beaver when necessary for the protection of his dams, ditches, trees or land, provided he first obtains from the game warden a special license authorizing him to do so. If he exercises the privilege granted him he must, within thirty days thereafter, report to the warden the number of animals killed and the location of the property where they were killed. Before he may sell the pelts he must obtain from the warden special authority to do so, and after sale

he must again report to the warden, giving the number of pelts sold and the name of the purchaser.

(2) The game warden may procure beaver to be killed upon open lands or game preserves whenever he deems it necessary to prevent them constructing dams which will interfere with the movements of fish in the stream or streams where the dams are about to be constructed or when the beaver are causing damage to the public roads, but the pelts of the beaver so killed and pelts confiscated under the provisions of section 3659 must be sold at public auction by the warden (section 3726), who must give to the purchaser a certificate of sale (section 3727).

Under the first exception beaver may be killed by a private individual specially licensed to do so, while under the second exception the killing is done, in contemplation of law, by the game warden himself. Aside from these two exceptions it is the declared policy of the state that beaver may not be killed lawfully under any circumstances; or, stated differently, the general rule is that beaver may not be lawfully killed in this state. The exceptions are that such animals may be killed lawfully by the grace of the state only under the restricted circumstances mentioned, and none other.

Section 3725 provides:. "The possession of the dead bodies, or any part thereof, or [of] any of the birds or animals mentioned in this Act, shall be *prima facie* evidence that such person or persons is or are guilty of killing the same." Section 3659 makes it the duty of the game warden to seize wild animals or any parts thereof possessed in violation of the laws, or showing evidence of illegal taking, and section 10606 declares the presumption that official duty has been regularly performed. From these provisions of our statutes it is made manifest that in this state private ownership of beaver pelts is not a matter of common right, but may be acquired only as the result of compliance with the restrictions imposed by the law, and even then the ownership is qualified; that possession of beaver pelts raises a presumption that the possessor

killed the animals from which the pelts were taken, and that beaver may be killed by a private individual only under the limited circumstances mentioned in section 3722.

Bearing in mind the fundamental distinction between the qualified ownership which one may acquire in wild animals and the perfect ownership which may attach to other property, and that the right to qualified ownership in wild animals is conferred specially by statute, and depends upon compliance with enumerated precedent conditions, the answer to the question raised by this appeal is manifest. It is a [5] general rule of pleading that, whenever one desires to avail himself of a statutory privilege or right granted to him, the existence of which right or privilege depends upon the presence of designated or enumerated facts, such facts must be alleged in order to constitute the foundation for the right or privilege claimed. (*Dye* v. *Dye*, 11 Cal. 163; *Perkins* v. *Loux*, 14 Idaho, 607, 95 Pac. 694; *Cochise County* v. *Michelena*, 15 Ariz. 477, 140 Pac. 62.)

Counsel for plaintiff cite *Linden* v. *McCormick*, 90 Minn. 337, 96 N. W. 785, in which it was held that the burden is not upon the possessor of deer and moose skins to allege and prove that the animals from which the skins were taken were killed lawfully; but that decision has no application here. It is made to rest upon the particular provisions of the Minnesota statute. The court there said: "The law authorizes the killing of moose and deer within a certain period during November of each year. There is no restriction upon the disposition of the skins by those entitled to kill such animals."

Because of the peculiar character of the subject matter of [6] this litigation and the restricted statutory title or right of possession which plaintiff may acquire therein, the burden was cast upon her to allege the facts from which it could be said *prima facie* that her possession and claim of ownership are lawful. (*Hornbeke* v. *White*, 20 Colo. App. 13, 76 Pac. 926; *Sherwood* v. *Stephens*, 13 Idaho, 399, 90 Pac. 345.)

In the absence of these allegations the complaint is insufficient and the demurrer was properly sustained.

The judgment is affirmed.

*Affirmed.*


MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, GALEN and STARK concur.